UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LYNN K. HAMMOND and**<br>**DAVID C. HORN,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.** | § | **CIV. ACTION No. 4:22-cv-2004** |
| | § | |
| **TRIP MATE, INC., VANTAGE TRAVEL** | § | |
| **SERVICE, INC., GENERAL GLOBAL** | § | |
| **ASSISTANCE, and UNITED STATES** | § | |
| **FIRE INSURANCE COMPANY,** | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VANTAGE
TRAVEL SERVICE, INC.'S MOTION TO COMPEL ARBITRATION
AND STAY OR DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the defendant Vantage Travel Service, Inc. ("Vantage"), in the above-entitled and numbered cause, and files this Motion to Compel Arbitration and to Stay or Dismiss pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. All of the plaintiffs' claims against Vantage are subject to a binding arbitration provision between plaintiffs and Vantage, and as such the plaintiffs' instant lawsuit is improperly filed in this Court and should be dismissed or stayed in favor of arbitration pursuant to the parties' agreement.

## I.     BACKGROUND

Vantage is a tour operator with its headquarters and principal place of business located at 90 Canal Street, Boston, Massachusetts.  Vantage has no offices located within the State of Texas.  *See* Declaration of Rossella Mercuri in Support of Defendant's Motion to Compel Arbitration and Stay or Dismiss ["Mercuri Dec."], ¶ 3, attached hereto as Exhibit A.

On May 1, 2019 the plaintiffs, Lynn K. Hammond and David C. Horn, made an initial booking for a trip from Vantage, *Ancient Wonders Egypt & Nile*, which was originally scheduled

to take place on April 13, 2020. (Mercuri Dec., ¶ 4.) The plaintiffs made an initial deposit of $2998.00 on that date, and subsequently paid the balance due, with final payment being made in January 2021. *Id.*

The plaintiffs were originally scheduled to travel on the *M/S Nebu* for their April 2020 trip. Mercuri Dec., ¶ 5. However, construction was delayed on the *M/S Nebu* and the vessel was not ready for the April 2020 departure. *Id.* Vantage scheduled a replacement vessel for the trip, but upon information and belief the plaintiffs did not wish to travel in the replacement vessel and instead changed their travel date to September 2020 in order to travel on the *M/S Nebu*. *Id.* However, the *M/S Nebu* still was not complete in time for the sailing in September 2020 and, due to the shutdown of the travel industry due to COVID-19, the trip was rescheduled to 2021. *Id.* The plaintiffs allege that prior to the rescheduled departure, Mr. Horn became extremely ill and the plaintiffs were forced to cancel the trip altogether. *Id.* The plaintiffs allege that they are due a refund from Vantage due to their cancellation. *Id.*

At all relevant times, it was Vantage's standard business practice to require all trip participants at the time they booked a trip to agree to terms and conditions contained in a Tour Participation Agreement ("TPA"). (Mercuri Dec., ¶ 6.) The plaintiffs booked their trip on May 1, 2019 and the applicable TPA governing the relationship between plaintiff and Vantage is attached to the (Mercuri Dec. as Exhibit 1. *Id.*, ¶ 6 and Ex. 1 thereto.)

The terms of this Agreement include, *inter alia*, a provision for binding arbitration that provides as follows:

> **BINDING ARBITRATION:** I agree that any dispute concerning, relating or referring to this Agreement, the brochure or any other literature concerning my trip, or the trip itself, shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16, either according to the then existing Commercial Rules of the American Arbitration Association (AAA) or pursuant to the Comprehensive Arbitration Rules & Procedures of the Judicial

> Arbitration and Mediation Services Inc. (JAMS). Such proceedings will be governed by substantive (but not procedural) Massachusetts law. The arbitrator and not any federal, state, or local court or agency shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, conscionability, or formation of this contract, including but not limited to any claim that all or any part of this contract is void or voidable.

(Mercuri Dec., ¶ 7 and Ex. 1, p. 3 thereto.)

Vantage includes the arbitration provision in the Agreement in an attempt to reduce the time and expense involved in resolving claims tour participants might make against it as a result of booking or participating in a Vantage tour. (Mercuri Dec., ¶ 8.)

The Agreement also included a provision whereby participants specifically accept the terms of the Agreement:

> **General Terms and Conditions**
>
> The terms and conditions contained in this Tour Participation Agreement (the "Agreement") govern the relationship between you (the "traveler") and Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel and Vantage Adventures (hereinafter "Vantage"). By reserving a trip, you agree to be bound by the terms of this Agreement.

(Mercuri Dec., ¶ 9 and Ex. 1, p. 1, thereto.)

Vantage sells its programs to individuals throughout the United States. (Mercuri Dec., ¶ 10.) The tour participants who booked the April 2020 departure of the *Ancient Wonders Egypt & Nile* cruise, resided in numerous locations outside of Massachusetts. *Id.* Indeed, it appears that the plaintiffs themselves reside in Houston, Texas. *See* United States Fire Insurance Company's Notice of Removal Petition, dated June 20, 2022 Dkt. # 1, ¶ 8, already on file with this Court.

## II.    ARGUMENT

### A. PLAINTIFFS' CLAIMS DO NOT BELONG IN THIS COURT BUT INSTEAD SHOULD BE REFERRED TO ARBITRATION

Plaintiffs' claims against Vantage do not belong in this Court, but instead should be referred to arbitration. As part of plaintiffs' registration for the trip with Vantage, they agreed to

terms in a contract providing as follows:

> **BINDING ARBITRATION:** I agree that any dispute concerning, relating or referring to this Agreement, the brochure or any other literature concerning my trip, or the trip itself, shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16, either according to the then existing Commercial Rules of the American Arbitration Association (AAA) or pursuant to the Comprehensive Arbitration Rules & Procedures of the Judicial Arbitration and Mediation Services Inc. (JAMS). Such proceedings will be governed by substantive (but not procedural) Massachusetts law. The arbitrator and not any federal, state, or local court or agency shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, conscionability, or formation of this contract, including but not limited to any claim that all or any part of this contract is void or voidable.

(Mercuri Dec., ¶ 7 and Ex. 1, p. 3 thereto.)

All of plaintiffs' allegations arise out of or relate to the Agreement. Accordingly, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA") the arbitration agreement is fully enforceable.

As noted above, the defendant Vantage is a tour operator with its headquarters and principal place of business located at 90 Canal Street, Boston, Massachusetts. (Mercuri Dec., ¶ 3.) As noted above, the terms of this Agreement include, *inter alia*, a provision for binding arbitration of "any dispute concerning, relating or referring to this Agreement, the brochure or any other literature concerning my trip, or the trip itself." (Mercuri Dec., ¶¶ 7 and Ex. 1, p. 3 thereto.) Vantage includes the arbitration provision in the Agreement to reduce the time and expense involved in resolving any claims tour participants make against it as a result of booking or participating in a Vantage tour. (Mercuri Dec., ¶ 8.)

### 1. THE ARBITRATION PROVISION UNMISTAKABLY DELEGATES TO THE ARBITRATOR THE "GATEWAY" QUESTION OF ENFORCEABILITY.

#### a. Delegation clauses, wherein parties agree to arbitrate "gateway" questions of arbitrability, are generally fully valid and enforceable.

In *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), an employee signed an

arbitration agreement which provided that an arbitrator had exclusive authority to resolve any dispute relating to the enforceability of the arbitration agreement (i.e. a delegation clause).  In other words, the delegation clause gave the arbitrator, and not a court, the authority to decide whether the arbitration agreement was valid.  The employee argued the arbitration agreement was unconscionable under state law.

The U.S. Supreme Court held that delegation clauses, wherein parties agree to arbitrate "gateway" questions of arbitrability (such as whether the parties agreed to arbitrate) are generally fully valid and enforceable:  "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement.  We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. at 68-69.

**b. Here, the Delegation Clause is Identical to the One in *Rent-A-Center* and Represents a Clear and Unmistakable Agreement to Arbitrate Gateway Questions of Arbitrability.**

The delegation clause in *Rent-A-Center* provided:

The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

Here, the delegation clause provides:

The arbitrator and not any federal, state or local court or agency shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, conscionability, or formation of this contract including, but not limited to any claim that all or any part of this contract is void or voidable.

Courts routinely confirm that delegation clauses (identical to the one at issue here) demonstrate a clear and unmistakable agreement to arbitrate arbitrability.  For example, in *Chung v. Nemer*, No. C 12-4608 PJH, 2012 WL 5289414, at *1 (N.D. Cal. Oct. 25, 2012), a plaintiff employee signed an arbitration agreement with her employer which contained a delegation clause giving

the arbitrator exclusive authority to determine issues of enforceability. The court rejected the plaintiff's contention that the delegation clause was unconscionable and compelled arbitration, holding:

> [T]he court finds that the arbitration agreement was clear in stating that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement." . . . Thus, by signing the arbitration agreement, plaintiff clearly and unmistakably agreed to arbitrate all disputes related to the agreement.

*Id.* at *1.[1]

Accordingly, this Court should find that the delegation clause represents a clear and unmistakable agreement to arbitrate gateway questions of arbitrability.

**2. EVEN IF THIS COURT WERE TO DECIDE GATEWAY ISSUES OF ARBITRABILITY, THE PARTIES' AGREEMENT CONTAINS AN UNAMBIGUOUS ARBITRATION PROVISION FULLY ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT.**

The arbitration provision in the Agreement clearly states that in the event "any dispute" relating to the contract or trip arise between Plaintiffs and Vantage, the dispute "shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16 . . ." (Mercuri Aff., ¶ 7, and Ex. 1, p. 3 thereto) (emphasis added). The FAA and decisions of the United States Supreme Court unequivocally require that this agreement to arbitrate be enforced.

**a. The FAA Reflects a Strong National Policy Favoring Arbitration.**

Congress enacted the FAA more than 90 years ago "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing

---

[1] *See also Saperstein v. Thomas P. Gohagan & Company*, 2020 WL 4464915 at *6 (N.D. Cal. August 4, 2020) (holding that a nearly identical delegation clause in tour operator's contract was valid and enforceable and required the parties to resolve gateway issues of arbitrability in arbitration); *Boursiquot v. United Healthcare Services of Delaware, Inc.,* 2020 WL 6053431 at *1, *5 (Mass. App. Ct. Oct. 14, 2020) (holding delegation clause which delegated to an arbitrator the resolution of "all disputes regarding . . . the propriety of the demand for arbitration" enforceable; "We think there is 'clear and unmistakable' evidence that the parties agreed to arbitrate questions of arbitrability.").

as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.[2]

The FAA "declare[s] a national policy favoring arbitration." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). In light of the FAA's purpose, a court must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," because a "prime objective" of arbitration "is to achieve 'streamlined proceedings and expeditious results.'" *Id.* at 357 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985); other internal quotes and citations omitted). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem' Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).[3]

As the Supreme Court reinforced in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682-683 (2010), whether enforcing an agreement to arbitrate or construing an arbitration clause, a court must "give effect to the contractual rights and expectations of the parties" (quoting *Volt v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479

---

[2] 9 U.S.C. § 2 states in full: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit an existing controversy arising out of such contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

[3] The FAA's legislative history makes clear that Congress intended "a broad reach of the Act, unencumbered by state law constraints," *Southland Corp.*, *supra*, 465 U.S. at 13, and that its principles and its rules apply in all federal and state courts construing contracts to arbitrate touching on interstate commerce. *Id.* at 10-16. As such, any state arbitration law that treats contracts to arbitrate specially or differently from contracts generally is pre-empted. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996).

(1989)), and agreements to arbitrate must be enforced according to their terms, *Id.* at 682 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)).  *See also KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) ("The [FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution' and 'requires courts to enforce the bargain of the parties to arbitrate.'") (internal citations omitted).

The Court must grant a motion to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute at issue falls within the scope of that agreement. *See*, *e.g.*, *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5ᵗʰ Cir. 1996).  Where both conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement").  Here, both of these conditions are met.

### b.  A Valid Agreement to Arbitrate Exists between Plaintiffs and Vantage.

### i)  The Agreement to Arbitrate Implicates Interstate Commerce.

Section 2 of the FAA requires that the agreement to arbitrate involve "commerce."  The FAA defines "commerce," in part, as "commerce among the several States or with foreign nations. . . ." 9 U.S.C. § 1.  The contract at issue in the present litigation involved an international trip to Egypt.  (Mercuri Dec., ¶ 4.)  The two plaintiffs are residents of Texas. (Removal Petition, Dkt. # 1, ¶ 8.)  Vantage is a Massachusetts Vantage sells its programs to individuals throughout the United States, and the tour participants who booked the trip with Vantage resided in numerous locations outside of Massachusetts.  (Mercuri Dec., ¶ 10.)

Under these facts, the contract containing the arbitration clause clearly implicates the

FAA because it involved the provision of services across interstate boundaries and involved interstate commerce between a Massachusetts corporation and the residents of other states as well as foreign states and countries. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967); *Phillips Petroleum Co. v. Marathon Oil Corp.*, 794 F.2d 1080, 1082 (5th Cir. 1986) (finding interstate commerce implicated in an agreement between two corporations which carried on interstate and international operations).

### ii.  Plaintiffs Agreed to Arbitrate Their Claims.

All evidence shows that plaintiffs agreed to submit their claims to arbitration. First, the arbitration clause is clear and straightforward. The entire Agreement consists of only 4 pages, and the arbitration clause carries the bolded title "BINDING ARBITRATION." (Mercuri Dec., ¶ 9, and Ex. 1, p. 3 thereto).

Second, the Agreement also included a provision whereby participants specifically accept the terms of the Agreement:

**General Terms and Conditions**

The terms and conditions contained in this Tour Participation Agreement (the "Agreement") govern the relationship between you (the "traveler") and Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel and Vantage Adventures (hereinafter "Vantage"). By reserving a trip, you agree to be bound by the terms of this Agreement.

(Mercuri Dec., ¶ 9 and Ex. 1, p. 1, thereto).

### c.  Plaintiffs' Claims Fall Within the Scope of the Arbitration Clause.

The arbitration clause in the Agreement provides that in the event "any dispute" arises between plaintiffs and Vantage "concerning, relating or referring to the Agreement, the brochure or any other literature concerning my trip, or the trip itself," the dispute "shall be resolved exclusively by binding arbitration . . ." (Mercuri Aff., ¶ 11, and Ex. 1 thereto). This kind of "classically broad" arbitration clause justifies a presumption of arbitrability:

> There is no dispute that the arbitration clause at issue is a classically broad one. [citations omitted]  The clause provides for arbitration of "any controversy or claim between [the parties] arising out of or relating to" the Agreement.  We have previously decided that this is precisely the kind of broad arbitration clause that justifies a presumption of arbitrability.  [citations omitted]

*Mehler v. Terminex Intern. L.P.*, 205 F.3d 44, 49 (2nd Cir. 2000).

Here, plaintiffs' state court Petition seeks damages, under various theories of liability, predicated on plaintiffs' assertion that Vantage failed to provide refunds required by the parties' contract.  As such, plaintiffs' claims unequivocally involve a dispute "concerning, relating or referring to the Agreement" and therefore the matter must be submitted to binding arbitration. [4]

### d.  Arbitration Agreements Such as this Between a Provider of Travel Services and the Public are Fully Enforceable.

Courts throughout the country inevitably enforce similar arbitration clauses contained in standard-form contracts between a travel provider and the general public.  *See, e.g., Global Travel Marketing, Inc. v. Shea*, 908 So. 2d 392 (Fla. 2005) (enforcing arbitration agreement entered into by parent for claims of wrongful death of son who was attacked and killed by a hyena on African safari); *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471 (S.D.N.Y. 2001), *aff'd*, 91 Fed. Appx. 702 (2d Cir. June 21, 2002) (tour operator's arbitration clause held effective, and case dismissed, on plaintiff's claims of personal injury alleged to have been caused by a defective bicycle provided to the plaintiff during the tour). [5]

---

[4] In any event, questions about the scope of an arbitration clause should be resolved in favor of arbitration and should be resolved by the arbitrator. *See, e.g., Moses H. Cone Mem. Hosp., supra*, 460 U.S. at 24-25 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Howard Elec. & Mech. Co. v. Frank Briscoe Co.*, 754 F.2d 847, 850 (9th Cir. 1985) ("The merits of the claim and any defenses are for the arbitrator to evaluate, not the courts.").

[5] *See also Radtke v. Hawaiian Isle Adventures, Inc.*, Civil No. 00-1-1236-04 (Haw. Cir. Ct., 1st Cir. June 6, 2001) (VSM), slip op. (tour participant injured in fall from cliff during hike in state park; arbitration clause enforced); *Burton v. Jack Atcheson & Sons, Inc.*, Case No. 990906454 (Utah Dist. Ct., Salt Lake Co. Oct. 19, 1999) Minute Entry (plaintiffs disappointed by big-game hunt recommended by defendant travel consultant; travel consultant's arbitration clause enforced); *Ripkey v. Beard*, Civil No. 99-00353 SOM (D. Haw. Aug. 27, 1999), slip op. (case stayed pending arbitration on tour participant's claims of

Wholly apart from these travel cases, the FAA has routinely been applied to other consumer transactions. *See, e.g., Mehler*, *supra*, 205 F.3d at 45 (contract between termite control service company and homeowner); *Allied-Bruce Terminex Cos. v. Dobson,* 513 U.S. 265 (1995) (same).

Arbitration benefits the parties for reasons similar to those the United States Supreme Court gave in upholding a forum selection clause printed on a standard form cruise ticket:

> . . . [A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding these motions. . . . [I]t stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991).

Arbitration clauses are "in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). And, comparable to the forum-selection clause in *Shute*, Vantage includes the arbitration clause in its Agreement to reduce the time and expense involved in resolving any claims tour participants make against it as a result of booking or participating in a Vantage tour. (Mercuri Dec., ¶ 8.) For this reason, the arbitration clause designating the proper arbitration resolution entity as being either the American Arbitration Association or Judicial Arbitration and Mediation Services should be enforced, as was the forum selection clause in the unsigned standard-form cruise ticket contract in *Shute, supra*.

Indeed, courts routinely enforce the terms in travel operator contracts which appear on

---

head injury caused by defective bicycle provided to the plaintiff by tour operator); *Sanchez v. Council on Int'l Educational Exchange, Inc. et al.*, No. BC500777 (Los Angeles Super. Ct., Oct. 31, 2013) (unreported) (enforcing arbitration agreement entered into by participants on study-abroad program to Brazil), petition denied, *Sanchez v. Superior Court of the County of Los Angeles*, No. B253349 (Cal. App. 2d Dist., March 28, 2014) (unreported).

pre-printed brochures, contracts and tickets as a matter of course.[6] *See, e.g., Ramage v. Forbes Intern. Inc.*, 987 F. Supp. 810, 819 (C.D. Cal. 1997) (granting summary judgment to tour operator based, in part, on contractual disclaimer in booking form agreement); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 389 (7th Cir. 1989) (affirming summary judgment to tour operator based, in part, on disclaimer of liability which appeared in newsletter mailed to plaintiffs); *Loeb v. United States Dep't of Interior*, 793 F. Supp. 431, 434-35, 439 (E.D.N.Y. 1992) (enforcing liability disclaimer in "Conditions of Tour" contract provided in tour information even though plaintiff claimed to have never seen it); *Connolly v. Samuelson*, 671 F. Supp. 1312, 1314, 1317 (D. Kan. 1987) (enforcing exculpatory clause appearing in tour operator's brochure and deposit receipt). Given that the FAA forbids the treatment of arbitration clauses in a manner different from other contractual provisions, *see Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996), this arbitration clause must be enforced according to its terms.

### 3.  THIS COURT SHOULD STAY THE ENTIRE PROCEEDING PENDING ARBITRATION OR DISMISS VANTAGE.

Courts must stay litigation and compel arbitration on all claims subject to a valid and enforceable arbitration agreement. *See* 9 U.S.C. § 3. The FAA "leaves no place for the exercise of discretion" by a trial court, but instead mandates that trial courts "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, *supra*, 470 U.S. at 218 (emphasis in original).

Under the FAA, however, courts may go beyond a stay and dismiss the proceedings when

---

[6] The Agreement also includes various other terms and conditions, including limitation of liability, force majeure and assumption of risk provisions. The issue of the validity of these other terms and conditions is not presently before this Court and, in fact, the determination of their efficacy is a matter for the arbitration proceeding itself. *See Global Travel Marketing*, *supra*, 908 So. 2d at 395, 405 (upholding arbitration provision in safari tour participant contract but specifically acknowledging that the enforceability of the other contractual terms, including limitation of liability provisions, were not before the court).

all of the issues before the court are arbitrable. *Spencer Furniture, Inc. v. Media Arts Group, Inc.*, 349 F. Supp. 2d 49, 51 (D. Mass. 2003) (citations omitted). Here, as the arbitration agreement is an "any dispute" clause, all claims against Vantage in plaintiffs' Complaint are subject to arbitration, leaving no claims against Vantage to be resolved following arbitration. As such, dismissal of this action is appropriate.

## Prayer

WHEREFORE, the defendant Vantage Travel Service, Inc. respectfully requests that this Honorable Court issue an Order granting defendant's Motion to Compel Arbitration and Stay or Dismiss in accordance with the terms of the parties' Agreement.

Dated:   July 29, 2022

Respectfully submitted,

**MOUND COTTON WOLLAN & GREENGRASS LLP**

*/s/ Stephanie R. Tippit*

Stephanie R. Tippit
Texas Bar No.: 24052969
3 Greenway Plaza, Suite 1300
Houston, Texas 77046
Telephone: (281) 572-8350
Email: stippit@moundcotton.com

Of Counsel:
Rodney E. Gould
rgould@smithduggan.com
Robert C. Mueller
rob.mueller@smithduggan.com
Smith Duggan Buell & Rufo LLP
55 Old Bedford Road, Suite 300
Lincoln, MA 01773
Tel:  617-228-4400
Fax: 781-259-1112

*Attorneys for Defendant Vantage Travel Service, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 29th day of July, 2022, a true and correct copy of the foregoing was delivered to the following counsel of record in accordance with the Federal Rules of Civil Procedure:

Michael C. Falick
Rothfelder & Falick, L.L.P.
Houston, Texas 77002
T: (713) 220-2288
F: (713) 658-8211
Attorney for Plaintiffs

*/s/Stephanie R. Tippit*_____
Stephanie R. Tippit