Case 4:22-cv-02004 Document 17 Filed on 02/21/23 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LYNN K. HAMMOND, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-2004 |
| § | |
| UNITED STATES FIRE INSURANCE § | |
| COMPANY (DELAWARE), *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Vantage Travel Service, Inc.'s ("Vantage") motion to compel arbitration and to stay or dismiss this case. Vantage's motion (Dkt. 5) is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Vantage sells luxury cruises and tours. When a customer books a trip with Vantage, Vantage provides that customer with a "Tour Participation Agreement," or "TPA." (Dkt. 5-3 at p. 3). The TPA opens with the following paragraph:

### General Terms and Conditions

The terms and conditions contained in this Tour Participation Agreement (the "Agreement") govern the relationship between you (the "traveler") and Vantage Travel Service, Inc. d/b/a Vantage Deluxe World Travel and Vantage Adventures (hereinafter "Vantage"). By reserving a trip, you agree to be bound by the terms of this Agreement.

Dkt. 5-2 at p. 7.

Just below the opening paragraph, the TPA recommends that the customer purchase a Travel Protection Plan ("TPP") from Vantage to insure the cost of the trip:

> **FOR YOUR BENEFIT, WE STRONGLY RECOMMEND THAT YOU PURCHASE TRAVEL PROTECTION. PLEASE SEE A BRIEF DESCRIPTION OF THE VANTAGE TRAVEL PROTECTION PLAN COVERAGE ON PAGE 4 OF THIS AGREEMENT. FOR DETAILS ON CONDITIONS AND LIMITATIONS, VISIT OUR WEBSITE AT WWW.VANTAGETRAVEL.COM/TPP OR ASK OUR RESERVATIONS SPECIALISTS OR CUSTOMER SERVICE REPRESENTATIVES WHEN YOU CALL.**

Dkt. 5-2 at p. 7.

As mentioned at the beginning of the TPA, page 4 of the TPA contains a short explanation of the TPP. By way of illustration, one of the paragraphs comprising that explanation reads:

> **If you must cancel your Vantage trip prior to departure**
> If you purchase Vantage's Full-Value Travel Protection Plan and must cancel your trip before your scheduled departure date for 1) a covered reason under the Trip Cancellation Benefit, you will be reimbursed for the unused non-refundable prepaid expenses for travel arrangements; or 2) for any reason under the Cancel for Any Reason Waiver, you will receive a Vantage Travel Certificate for the cancellation fee amount (the balance of the refund, if applicable, will be made either by check or credit card credit). Cancel for any reason and your trip is covered by cash or travel credits.

Dkt. 5-2 at p. 10.

The TPA then directs the customer to the website of the TPP administrator, Defendant Trip Mate, Inc. ("Trip Mate"), for more details about the TPP:

> This is only a brief description of the plan. For complete details, you should review the Travel Protection Plan at www.tripmate.com and enter plan number F427V. Please Note: This section does not constitute or form any part of the Travel Protection Plan.
>
> The Travel Insurance Benefits of this plan (and for New York residents only, the Travel Arrangement Protection Benefits) are underwritten by United States Fire Insurance Company, 5 Christopher Way, Eatontown, NJ 07724. All inquiries and claims should be reported to the Plan Administrator: Trip Mate, Inc. (In CA, dba Trip Mate Insurance Agency), 9225 Ward Parkway, Suite 200, Kansas City, MO 64114, 1-800-888-7292.

Dkt. 5-2 at p. 10.

The TPA also contains the following arbitration clause:

> **BINDING ARBITRATION:** I agree that any dispute concerning, relating or referring to this Agreement, the brochure or any other literature concerning my trip, or the trip itself, shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§1-16, either according to the then existing Commercial Rules of the American Arbitration Association (AAA) or pursuant to the Comprehensive Arbitration Rules & Procedures of the Judicial Arbitration and Mediation Services Inc. (JAMS). Such proceedings will be governed by substantive (but not procedural) Massachusetts law. The arbitrator and not any federal, state, or local court or agency shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, conscionability, or formation of this contract, including but not limited to any claim that all or any part of this contract is void or voidable.

Dkt. 5-2 at p. 9.

This lawsuit arises out of a failed attempt by Plaintiffs, Lynn Hammond ("Hammond") and David Horn ("Horn"), to book a trip to Egypt on Vantage's m/s NEBU vessel. According to their live pleading, Plaintiffs booked the trip and paid Vantage the full purchase price (nearly $20,000, though they received a $2,000 refund as part of a magazine promotion) for it. (Dkt. 1-4 at pp. 2–3). To insure the cost of the trip, Plaintiffs also

purchased a TPP from Vantage. (Dkt. 1-4 at p. 3). Plaintiffs allege that they initially scheduled their trip for April of 2020. (Dkt. 1-4 at p. 2).

Because of construction delays, Vantage rescheduled the trip twice, first to September of 2020 and then to 2021. (Dkt. 1-4 at p. 3). Unfortunately, Horn was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD") in late 2020; and his pulmonologist "advised [him] to substantially limit travel, avoid lengthy air travel, and avoid large groups and unhealthy air environments." (Dkt. 1-4 at p. 3). After receiving his pulmonologist's advice, Horn decided "to cancel Plaintiffs' reservation and seek a refund of travel costs under their [TPP]." (Dkt. 1-4 at p. 3).

Plaintiffs allege that their "[TPP] (Plan #F427V) guaranteed Plaintiffs a refund of the nonrefundable portion of the cost of the trip" and that Horn's "diagnosis of COPD certainly constitutes a life-long and incurable sickness entitling Plaintiffs to a full refund under the [TPP]." (Dkt. 1-4 at pp. 3–4). Plaintiffs further allege that they submitted a "detailed Trip Mate Claim Form" and "documentary proof from Mr. Horn's pulmonologist" to Vantage and Trip Mate over the course of many requests for a refund under the TPP. (Dkt. 1-4 at p. 4). Vantage offered "a refund in future travel credit, not cash[,]" and Plaintiffs rejected the offer as "contrary to the terms of their [TPP.]" (Dkt. 1-4 at p. 4).

Plaintiffs retained counsel and sent a demand letter requesting a full cash refund. (Dkt. 1-4 at p. 4). In response, "Defendants informed Plaintiffs that their claims had to be brought before the American Arbitration Association" ("AAA"). (Dkt. 1-4 at p. 5). Plaintiffs attempted to initiate an arbitration with AAA, but they received a letter indicating

that AAA was "declin[ing] to administer [Plaintiffs'] claim and any other claims between Vantage Deluxe World Travel and its consumers" because Vantage had not registered its arbitration clause with AAA's Consumer Clause Registry or completed the other steps in AAA's registration process for consumer claims. (Dkt. 1-4 at p. 5; Dkt. 7 at p. 12). The letter noted that, "[a]ccording to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." (Dkt. 7 at p. 12).

Plaintiffs then sued Vantage and its co-defendants in Texas state court for breach of contract, violations of the Texas Deceptive Trade Practices Act, fraud, fraud in the inducement, negligence, gross negligence, negligence per se, breach of the duty of good faith and fair dealing, and violations of Chapter 541 of the Texas Insurance Code. (Dkt. 1-4 at pp. 5–9). Defendant United States Fire Insurance Company removed the case to this Court under the diversity jurisdiction statute, 28 U.S.C. § 1332, and Vantage moved to compel arbitration based on the TPA's arbitration clause. (Dkt. 1; Dkt. 5).

## LEGAL STANDARDS

In adjudicating a motion to compel arbitration under the Federal Arbitration Act ("FAA"), courts in the Fifth Circuit conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question, which the Court does by evaluating: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* at 258. The second step is to determine "whether legal constraints external to the parties' agreement" foreclose the

arbitration of the dispute. *Id.* For instance, a party may waive its right to enforce a contractual agreement for arbitration when that party is in default in the arbitration proceedings. *Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603, 606 n.4 (5th Cir. 1995).

When a dispute concerns a maritime contract, federal admiralty law determines whether there is a valid agreement to arbitrate; such is the case here.[1] *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 446 (N.D. Tex. 2019); *see also Har-Win, Inc. v. Consolidated Grain & Barge Co.*, 794 F.2d 985, 986–87 (5th Cir. 1986) ("Because this case concerns the interpretation of maritime contracts, federal admiralty law rather than state law provides the parol evidence rule which must be applied."); *The Moses Taylor*, 71 U.S. 411, 425–27 (1866) ("The case presented is clearly one within the admiralty and maritime jurisdiction of the Federal courts. The contract for the transportation of the plaintiff [by steamer on the Pacific Ocean] was a maritime contract."). "[T]he requisite elements of contract formation in the maritime context are offer, acceptance, and consideration." *Jackson*, 389 F. Supp. 3d at 446. "The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms." *One Beacon Insurance Co. v.*

---

[1] Typically, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 530 (5th Cir. 2019). The Court notes that its conclusions as to the validity of the arbitration clause in this case would not change if Texas law applied. The parties have neither briefed any choice-of-law issues nor specifically argued for the application of any particular body of law.

*Crowley Marine Services, Inc.*, 648 F.3d 258, 269 (5th Cir. 2011) (applying general maritime law). The "strong federal policy favoring arbitration . . . does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

Every circuit but the Fifth Circuit utilizes the summary judgment standard of Federal Rule of Civil Procedure 56 to evaluate motions to compel arbitration under the FAA, though the Third and Eighth Circuits also appear to endorse a standard based on Federal Rule of Civil Procedure 12(b)(6) in cases where arbitrability is apparent from the face of the pleadings. *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174–75 & n.7 (1st Cir. 2021) (collecting cases). The Fifth Circuit has not articulated the appropriate procedure, but district courts within it have used the Rule 56 standard. *See, e.g., Jackson*, 389 F. Supp. 3d at 443–44. No party has proposed an alternative in this case, and there is no reason to think that the Fifth Circuit will break from the other circuits, so the Court will use the commonly employed Rule 56 procedure.

In the context of a motion to compel arbitration, the Rule 56 standard requires the movant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *Jackson*, 389 F. Supp. 3d at 445 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)). Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact for trial. *Jackson*, 389 F. Supp. 3d at 445 (citing *Hancock v. American Telephone and Telegraph Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "In deciding whether the party opposing . . . compelled arbitration . . . has identified a genuine issue of material fact for trial, the evidence of the non-movant

is to be believed and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (quotation marks omitted). However, "[j]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## ANALYSIS

Plaintiffs oppose Vantage's motion to compel arbitration on two grounds: (1) Vantage has not presented evidence sufficient to demonstrate an enforceable agreement to arbitrate because the only evidence Vantage has proffered is inadmissible; and (2) Vantage waived its right to compel arbitration by failing to comply with AAA's registration protocols for consumer claims. (Dkt. 7 at pp. 5–7).

The Court disagrees with Plaintiffs' first contention; the record conclusively shows the existence of a valid arbitration agreement, and Plaintiffs themselves tried to enforce that agreement. However, the Court agrees with Plaintiffs' second contention. *See Noble Capital Fund Management, L.L.C. v. US Capital Global Investment Management, L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022) ("[P]arties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail.").

> i. *Evidence regarding the existence of an arbitration agreement*

Plaintiffs first argue that Vantage's motion must be denied because Vantage has only presented inadmissible evidence of an enforceable arbitration agreement. The Court finds this argument unpersuasive.

To prove up the relevant arbitration agreement, Vantage has attached a copy of the TPA to its motion to compel arbitration. (Dkt. 5-2 at pp. 7–10). The copy of the TPA is accompanied by an unsworn declaration ("the general counsel declaration") in which Vantage's general counsel testifies as follows:

> 6. At all relevant times, it was Vantage's standard business practice to require all trip participants at the time they booked a trip to agree to terms and conditions contained in a Tour Participation Agreement ("TPA"). The plaintiffs booked their trip on May 1, 2019 and the applicable TPA governing the relationship between plaintiff and Vantage is attached hereto as Exhibit 1.

Dkt. 5-2 at p. 3.

Plaintiffs contend that this testimony "fails to provide information sufficient to support that Plaintiffs agreed to the [TPA]." (Dkt. 7 at p. 5). Plaintiffs further object to the general counsel declaration on the grounds that it fails to satisfy the requirements of the business records exception to the hearsay rule. (Dkt. 7 at p. 5). *See* Fed. R. Evid. 803(6).[2]

---

[2] Federal Rule of Evidence 803(6) provides that a "record of an act, event, condition, opinion, or diagnosis" is admissible if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

Taking those contentions in reverse order, Plaintiffs' hearsay objection is meritless. The TPA is being offered to prove its existence, not to prove the truth of any matter asserted within it. *See* Fed. R. Evid. 801(c) (providing the definition of hearsay); *see also Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) ("The admission of a contract to prove the operative fact of that contract's existence . . . cannot be the subject of a valid hearsay objection. To introduce a contract, a party need only authenticate it.") (footnote omitted). "A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it." *Kepner-Tregoe*, 12 F.3d at 540 (footnote omitted). The Court overrules Plaintiffs' hearsay objection. !

The Court also rejects Plaintiffs' argument that the general counsel declaration "fails to provide information sufficient to support that Plaintiffs agreed to the [TPA]." (Dkt. 7 at p. 5). Plaintiffs cannot reasonably contest the existence of a contract that they have sued on. "They cannot claim the benefits of the [TPA] by suing to enforce [its TPP provisions] in one court while at the same time disclaiming that they ever had a contract in this Court." *Strucsure Home Warranty, LLC v. Sulzbach*, No. 4:20-CV-2915, 2021 WL 4240887, at *4 (S.D. Tex. Jan. 25, 2021). Moreover, Plaintiffs cannot reasonably challenge the validity of

---

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

an arbitration clause that they themselves have tried to enforce. It would be hard to find stronger evidence of reasonable notice of, and assent to, a contract term than an attempt to enforce that term. *See One Beacon*, 648 F.3d at 269 ("The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms.").

        ii.      *AAA's rejection of the dispute*

Nevertheless, the Court agrees with Plaintiffs' second argument against Vantage's motion, which is that Vantage waived its right to compel arbitration by failing to comply with AAA's registration protocols for consumer claims. (Dkt. 7 at pp. 5–7). On this record, evidence demonstrating Vantage's failure to comply with AAA's registration protocols requires denial of its motion to compel arbitration because arbitration "has been had" in accordance with the parties' arbitration agreement.

      *Galey* and *Noble Capital*

The reference in the TPA's arbitration clause to AAA's rules and the rules of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") constitutes a forum selection clause requiring adjudication before either AAA or JAMS. The Fifth Circuit has held that "clauses . . . providing for arbitration 'in accordance with' a particular set of rules should be interpreted as forum selection clauses." *Galey v. World Marketing Alliance*, 510 F.3d 529, 532 (5th Cir. 2007). When an arbitration clause requires, for example, "arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. (NASD)," then "the parties have agreed that the NASD is the only appropriate forum"

for disputes falling within the clause's scope. *Id*. The arbitration clause in the contract at issue in this case requires arbitration "according to the then existing" AAA or JAMS rules. (Dkt. 5-2 at p. 9). Under *Galey*, the parties in this case agreed that one or the other of AAA or JAMS was the only appropriate forum for this dispute. Before filing this lawsuit, Plaintiffs attempted to arbitrate with AAA, in compliance with the arbitration clause.

In *Noble Capital*, the parties agreed to two clauses requiring arbitration in accordance with JAMS rules; and the plaintiff (Noble Capital[3]) initiated a JAMS arbitration against the defendant (US Capital). *Noble Capital*, 31 F.4th at 335–36. A third party (an investment fund) was involved in the arbitration, and the JAMS panel terminated the arbitration before reaching the final merits because the third party was unable to pay its portion of the arbitration expenses. *Id.* at 335. After the JAMS panel terminated the arbitration, Noble Capital sued US Capital in Texas state court. *Id*. US Capital removed the case to federal court and moved to compel arbitration; the motion was denied. *Id.*

The *Noble Capital* panel affirmed the denial of US Capital's motion to compel arbitration. *Id*. at 337. The panel held that:

> the parties' arbitration agreements called for arbitration pursuant to JAMS Comprehensive Arbitration Rules and Procedures, which included the right of JAMS to terminate the arbitration proceedings for nonpayment of fees by any party. Exercising this right, JAMS terminated the arbitration proceeding following the [third party's] nonpayment. Following the lead of our sister circuits, we conclude that arbitration 'has been had.' Even though the arbitration did not reach the final merits and was instead terminated because of a party's failure to pay its JAMS fees, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements.

---

[3] Two funds created by Noble Capital were also plaintiffs, but for clarity the Court will simply refer to all three as "Noble Capital."

*Id*. at 336.

The same holds true in this case. Plaintiffs initiated an arbitration with AAA as provided for by the TPA, and AAA terminated that proceeding pursuant to its rules. (Dkt. 7 at p. 12). Pursuant to its rules, AAA also pointed out that, since it had declined to administer the arbitration, "either party [could] choose to submit its dispute to the appropriate court for resolution." (Dkt. 7 at p. 12). Accordingly, under *Noble Capital*, arbitration "has been had" in accordance with the parties' arbitration agreement. *Id*.

### *Freeman*

Vantage raises two points in its reply brief that the Court must address. First, Vantage argues that, "[w]hile Plaintiffs may have been unsuccessful in instituting an arbitration before the AAA, JAMS remains a viable option and nothing in the arbitration agreement states that a party may forgo arbitration altogether by only selecting AAA and having the arbitration claim denied there." (Dkt. 8 at pp. 5–6).

The Court finds this argument unpersuasive. *Noble Capital* cites an Eleventh Circuit case, *Freeman v. SmartPay Leasing, LLC*, 771 Fed. App'x 926 (11th Cir. 2019), that deals with a materially identical arbitration clause and addresses the exact argument made by Vantage. In *Freeman*, the district court vacated its order referring a case to arbitration after JAMS terminated the arbitration on account of the defendant's failure to pay the filing fee and refusal to comply with JAMS's Consumer Minimum Standards. *Freeman*, 771 Fed. App'x at 931–34. In affirming the district court, the *Freeman* panel held that the plaintiff "had a contractual right to choose between JAMS and AAA in the parties' arbitration

13 / 16

agreement, but her choice of JAMS was thwarted due to [the defendant's] refusal to" satisfy the JAMS requirements. *Id.* at 933–34. The *Freeman* panel further wrote:

> Although [the defendant] contends that [the plaintiff] was required to file a claim with AAA when JAMS refused to administer the claim, the district court did not err in not requiring [the plaintiff] to arbitrate in front of AAA. [The plaintiff] had a contractual right to choose to arbitrate with JAMS or AAA. The parties' arbitration agreement did not require that she choose AAA when [the defendant] failed to pay the initial filing fee to JAMS.
> *Id.* at 933 n.3.

The Court finds *Freeman* persuasive and consistent with *Noble Capital*. As the *Noble Capital* panel wrote, "parties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail." *Noble Capital*, 31 F.4th at 336. The *Noble Capital* opinion—particularly in light of its unreserved citation to *Freeman*—provides no reason to think that the Fifth Circuit would have reached a different result if the arbitration clause in that case had allowed parties to choose to arbitrate with either JAMS or AAA. *See id.* at 336 n.7.

### AAA's rules

Vantage also mentions in a footnote in its reply brief that "the arbitration provision in the TPA states that if arbitration proceeds under the AAA, it is through its 'Commercial Rules,' not the Consumer Rules." (Dkt. 8 at p. 5). Seemingly, Vantage is contending that AAA terminated the arbitration because of Plaintiffs' failure to invoke the correct set of AAA rules, not because of Vantage's failure to comply with AAA's registration process for consumer claims. Assuming that this distinction matters under *Noble Capital*, the record and AAA's rules do not support Vantage's contention.

The AAA rules provide that AAA's Consumer Arbitration Rules apply when the parties "have provided for arbitration by [AAA]" and "the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the Consumer Arbitration Rules." *See* R-1(a) of AAA's Consumer Arbitration Rules.[4] AAA includes the following definition of "consumer agreement" in its Consumer Arbitration Rules:

> The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.
> *See* R-1(a) of AAA's Consumer Arbitration Rules.

AAA's Consumer Arbitration Rules list contracts for "[t]ravel services" as one example of a typical consumer agreement. *See* R-1(a) of AAA's Consumer Arbitration Rules.

By all indications, the TPA meets AAA's definition of a consumer agreement. The general counsel declaration explains that the TPA's terms are standardized, systematically applied, and non-negotiable; and the TPA is a contract for travel services. Accordingly, under AAA's rules, AAA's Consumer Arbitration Rules applied to this dispute

---

[4] The Court takes judicial notice under Federal Rule of Evidence 201 of AAA's rules, which are "easily available through the AAA's website." *Wilson v. United Health Group, Inc.*, No. 2:12-CV-1349, 2012 WL 6088318, at *4 n.4 (E.D. Cal. Dec. 6, 2012); *see also Shirley v. FMC Technologies, Inc.*, No. A-20-CV-261, 2020 WL 5995695, at *5 n.3 (W.D. Tex. Oct. 9, 2020) (citing *Wilson* and taking judicial notice of a different arbitration organization's rules). The Court accessed the rules at the following URL: www.adr.org/Rules.

notwithstanding the TPA's invocation of AAA's Commercial Rules; and evidence in the record reflects that AAA's termination of the arbitration proceeding initiated by Plaintiffs is solely attributable to Vantage's failure to comply with AAA's registration process for consumer claims. Under *Galey*, *Noble Capital*, and *Freeman*, the Court will deny Vantage's motion to compel arbitration.

## CONCLUSION

Defendant Vantage Travel Service, Inc.'s motion to compel arbitration and to stay or dismiss this case (Dkt. 5) is **DENIED**.

SIGNED at Houston, Texas on February 21, 2023.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE